IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL C. SCHMIDT, | : |
| Plaintiff, | : Case No. 4:07-CV-1190 |
| v. | : (Judge Jones) |
| JAMES P. CREEDON, et al., | : |
| Defendants. | : |

**MEMORANDUM AND ORDER**

**April 2*Y*, 2008**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before this Court is a Motion to Dismiss Count One of the Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("the Motion"), filed by all of the Defendants to this action, James Creedon, Connie Tennis, Richard Shaffer, and Gregory Green (collectively, "Defendants"). (Rec. Doc. 7). For the reasons that follow, the Motion will be denied.

**PROCEDURAL HISTORY:**

On July 2, 2007, Plaintiff Michael Schmidt ("Plaintiff" or "Schmidt") initiated this action via the filing of a Complaint. (Rec. Doc. 1).

On September 26, 2007, Defendants filed the instant Motion challenging the

legal sufficiency of Count I of the Complaint. (Rec. Doc. 7). As the Motion has been briefed (see docs. 12, 19), it is ripe for disposition.

**STANDARD OF REVIEW:**

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965. A

2

plaintiff must make "a 'showing' rather than a blanket assertion of an entitlement to relief," and "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." Phillips, 515 F.3d at 232 (citing Twombly, 127 S. Ct. at 1965 n.3). "[A] complaint must allege facts suggestive of [the proscribed] conduct," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965, 1969 n.8. Therefore, "stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S. Ct. at 1965 n.3).

On the other hand, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. at 231 (citing Twombly, 127 S. Ct. 1964-65, 1969 n.8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. at 234.

**FACTUAL BACKGROUND:**

As is required by the standard of review applicable to the Motion, the following recitation of the facts is based on the averments in Plaintiff's Complaint.

3

(Rec. Doc. 1).

Plaintiff "was, at all relevant times, a Capitol Police Officer employed by [the] Commonwealth of Pennsylvania, Department of General Services." Id. at ¶ 3. At all times relevant, all Defendants were also employees of the Commonwealth of Pennsylvania, Department of General Services: Connie Tennis ("Tennis") was Chief of Labor Relations for the Bureau of Human Resources; James Creedon ("Creedon") was Secretary of the Department of General Services; Richard Shaffer ("Shaffer") was Superintendent of the Capitol Police; and Gregory Green ("Green") was Director of the Bureau of Human Resources.

On July 18, 2006, Shaffer and unnamed others met with Tennis and Green "to report an allegation of misconduct directed at Schmidt."[1] Id. at ¶ 8. On same date, Green, on behalf of Creedon, notified Schmidt via letter that Schmidt was suspended without pay. Plaintiff alleges that he was not afforded an opportunity to present his position prior to the commencement of the suspension.

Although apparently the suspension notification indicated that the same would be sixty (60) days in duration, Schmidt was actually suspended "for the period July 19, 2006 until March 14, 2007." Id. at ¶ 11. Soon after receipt of the

---

[1] Based on the other averments in Plaintiff's Complaint, we agree with Defendants' conclusion that although Plaintiff indicates that this meeting took place on July 18, 2007, Plaintiff must have intended to indicate that this meeting took place on July 18, 2006.

4

suspension notification, Plaintiff "filed a grievance through his collective bargaining representative, the Fraternal Order of Police, Lodge 85 (Capitol Police), alleging, among other things, that he was suspended in violation of his constitutional right to due process." Id. at ¶ 17.

On March 14, 2007, Plaintiff was discharged.

**DISCUSSION:**

Much like Plaintiff's factual allegations, his claims are relatively few. "Plaintiff alleges [in Count I] that he was suspended in violation of his Fourteenth Amendment due process rights and [in Count II] that his subsequent discharge was in retaliation for grieving his suspension in violation of the First and Fourteenth Amendments[, both] pursuant to 42 U.S.C. §§ 1983 and 1985." (Rec. Doc. 12 at 3). However, as noted previously, Defendants' Motion attacks only Plaintiff's procedural due process claims in Count I. Accordingly, we limit our inquiry to the same.

As both parties recognize, "[t]he Fourteenth Amendment of the Constitution forbids a state from depriving persons of life, liberty, or property without due process of law." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) (citing U.S. Const. amend. XIV, § 1). Further, the parties also appear to appropriately agree that when considering whether procedural due process rights have been violated,

5

the courts within the Third Circuit "employ the familiar two stage analysis, inquiring (1) whether the asserted individual interests are encompassed within the [F]ourteenth [A]mendment's protection of life, liberty, or property; and (2) whether the procedures available provided the plaintiff with due process of law." Id. (internal quotations and citations omitted). See also Coreia v. Schuylkill Co. Area Vocational-Tech. Sch. Auth., 241 Fed. Appx. 47, 49 (3d Cir. 2007) (analyzing a procedural due process claim using the aforementioned test).

Although they do not explicitly concede sufficient allegations as to the first inquiry, Defendants argue only that "Plaintiff cannot satisfy the second prong of the due process analysis because Plaintiff was provided with, and utilized, his union's grievance process." (Rec. Doc. 12 at 4). As Defendants' sole argument is that Count I fails to state a claim because the procedures afforded to Plaintiff satisfy due process requirements, we will assume, without deciding, that the suspension at issue satisfies the first Alvin inquiry: infringement upon a protected property interest.

Turning, then, to the second inquiry, we note the parties' assertions as to the same: In support of their argument that the grievance process satisfies the requirements of due process, Defendants cite such cases as Pederson v. S. Williamsport Area Sch. Dist., 677 F.2d 313 (3d Cir. 1982), and Zugarek v. S.

6

Tioga Sch. Dist., 214 F. Supp. 2d 468 (M.D. Pa. 2002), as standing for the proposition that "a grievance arbitration procedure satisfies due process." (Rec. Doc. 12 at 5).

In response, Plaintiff asserts that Defendants have misstated the law as to the procedures required prior to the deprivation associated with Plaintiff's suspension. Plaintiff relies primarily upon Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985), which indicates, inter alia, that "all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the Ohio statute. Because respondents allege in their complaints that they had no chance to respond, the District Court erred in dismissing for failure to state a claim." Id. at 547-48.

Upon our review of the authorities cited by Plaintiff, we conclude that more recent jurisprudence clears up the proverbial waters that Plaintiff's counsel has muddied. Recently, the Court of Appeals for the Third Circuit reiterated that in 1997, the Supreme Court "noted that it had, on several occasions, found that post-deprivation process alone may satisfy the requirements of the Due Process Clause if a state must act quickly or if pre-deprivation process would be impractical." Solomon v. Phila. Hous. Auth., 143 Fed. Appx. 447, 453 (3d Cir. 2005) (citing Gilbert v. Homar, 520 U.S. 924, 930 (1997)) (emphasis added). In deciding

whether a particular process accorded an individual is constitutionally sufficient, including the failure to accord pre-suspension procedural due process to a police officer, see Solomon, 143 Fed. Appx. at 453-54, there are three factors that courts must consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.

Gilbert, 520 U.S. at 931-32 (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)). In light of Solomon and Gilbert, we find unpersuasive what we perceive to be Plaintiffs' general argument that some sort of process must always be employed prior to a deprivation of a person's life, liberty, or property.

However, the Third Circuit's analysis in Solomon also leads us to find unpersuasive Defendants' argument in favor of dismissal. Indeed, we think this early juncture is an inappropriate time at which to dismiss Plaintiff's procedural due process claim. In Solomon, the Third Circuit concluded that "[r]egardless of whether [a police officer] could have challenged [his] suspension through the grievance procedure after he had already been suspended . . . [,] the failure to accord [him] pre-suspension due process in this case was a constitutional violation." 143 Fed. Appx. at 455, 457 (emphasis added). Turning to the few

factual allegations before us, we see that no allegations that provide a basis for us to conclude that the state had to act quickly or that a pre-deprivation process would have been impractical. Solomon, 143 Fed. Appx. at 453. Neither do we have a record on which to conduct the requisite balancing test for a determination of constitutionality of the procedures that were afforded.

Accordingly, for all of the aforestated reasons, Defendants' Motion to dismiss Count I for failure to state a claim will be denied.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendants' Motion to Dismiss Count One of the Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (doc. 7) is hereby **DENIED**.

John E. Jones III
United States District Judge